UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**XING PING LIANG,**<br>            **Debtor** | Chapter 7<br>Case No. 15-14193-FJB |
| **FENG CHEN,**<br>            **Plaintiff,**<br>v.<br><br>**XING PING LIANG,**<br>            **Defendant.** | Adversary Proceeding<br>No. 16-01096-FJB |

**MEMORANDUM OF DECISION AND ORDER ON**
**PLAINTIFF'S MOTION FOR (PARTIAL) SUMMARY JUDGMENT**

By her complaint in this adversary proceeding, the Plaintiff, Feng Chen, seeks a determination that the debt owed to her by the Debtor, Xing Ping Liang, is excepted from discharge under 11 U.S.C. § 523(a) and the denial of the Debtor's discharge under 11 U.S.C. § 727.

This matter is before the Court on the Plaintiff's Motion for (Partial) Summary Judgment in which she seeks judgment on Counts I, III, and IV of the Complaint because she can prove as a matter of law all of the essential elements of her claims. As detailed below, I find that summary judgment is not appropriate because there are genuine issues of material fact and, therefore, deny the Plaintiff's Motion for Summary Judgment.

**PROCEDURAL HISTORY**

On October 30, 2015, the Debtor filed a voluntary petition for relief under chapter 7 along with all schedules and statements. In Schedule B – Personal Property, the Debtor listed two bank accounts,

one with Sovereign Bank and another with Citibank. Among other creditors, the Debtor listed the Plaintiff in her Schedule F – Creditors Holding Unsecured Nonpriority Claims, as the holder of a $58,000 undisputed claim for a "personal loan." In her Schedule J: Your Expenses, the Debtor listed two dependents, a daughter and a son. According to the Debtor's Official Form 22A-1 Chapter 7 Statement of Your Current Monthly Income, her current monthly income is $2,328.47 consisting of wages from her data entry job and food stamps. On the same form, the Debtor also indicated that there are three people in her household.

After conducting a 2004 examination of the Debtor, the Plaintiff commenced this adversary proceeding on June 6, 2016. In her four-count Complaint, the Plaintiff objects to the dischargeability of the Debtor's debt to the Plaintiff under § 523(a)(2)(A) because the debt was obtained by fraud (Count I). The Plaintiff also objects to the Debtor's discharge under § 727(a)(2)(A) because the Debtor, with the intent to defraud creditors, concealed an account with The Bank of New York Mellon ("BNYM") (Count II), under § 727(a)(4) because she made a false oath regarding her monthly income, her household size, and her assets (Count III), and under § 727(a)(5) because she concealed her bank account with BNYM by failing to list it in her schedules (Count IV).

On June 28, 2016, the Debtor moved to amend her schedules to include the BNYM account on Schedule B, which she describes as a Health Savings Account ("HSA"), to claim an exemption in the BNYM account on Schedule C, and to change the Plaintiff's claim on Schedule F to "disputed." The Plaintiff filed a response to the Debtor's motion to amend, but did not request that the Court deny the motion. For reasons that are not apparent on the docket, the Debtor filed a superseding motion to amend (the "Second Motion") on July 27, 2016. Absent objection, the Court granted the Debtor's Second Motion and allowed the amendment to the schedules.

The Plaintiff filed her Motion for Summary Judgment seeking the entry of judgment in her favor on Counts I, III, and IV. In support of her motion, the Plaintiff relies on documents filed in the Debtor's

2

bankruptcy case, the Plaintiff's Response to First Set of Interrogatories of Defendant, the deposition transcript from the Debtor's 2004 Examination, ten handwritten "receipts," a check from the BNYM account, pictures of parking stickers, and a Massachusetts Registry of Motor Vehicles report. The Debtor submitted an Affidavit in support of her opposition to the Motion for Summary Judgment.

**POSITIONS OF THE PARTIES**

a.  **The Plaintiff**

The Plaintiff claims that the Debtor borrowed $58,000 from her over the course of approximately ten years. The Plaintiff alleges that the Debtor made oral promises that she would repay the money, and drafted and signed receipts. The Plaintiff claims that the Debtor made the promises knowing that she did not intend to repay the loan.

The Plaintiff also relies on ten "receipts" which she claims were signed by the Debtor each time she borrowed money from the Plaintiff. The Plaintiff alleges that the Debtor made three partial payments to induce the Plaintiff to loan her more money. The Plaintiff anticipates that the Debtor will argue that she borrowed money on behalf of her ex-husband and submits that the Debtor essentially "co-signed" loans to him.

The Plaintiff also claims that the Debtor knowingly and fraudulently made a false oath in her Schedule B because she omitted the account with BNYM. Prior to her 2004 examination, the Debtor produced a copy of a check drawn on the BNYM account and the date on the check pre-dates the Debtor's bankruptcy filing. The Plaintiff contends that existence of the check demonstrates that the Debtor knew that the BNYM account existed and that there was money in that account.

The Plaintiff also alleges that the Debtor's household size for purposes of Official Form 22A-1 should be four people because the Debtor failed to include her boyfriend. The Plaintiff submits that the Debtor's boyfriend should be included in her household because he frequently sleeps at the Debtor's

3

residence, he lists the Debtor's address on his driver's license and vehicle registration, and he has a parking sticker for the Debtor's apartment complex.

b.  **The Debtor**

The Debtor denies borrowing money from the Plaintiff and denies that she promised to repay the Plaintiff. The Debtor claims that she signed the receipts under instructions from her ex-husband and out of fear for her life. The Debtor states that her ex-husband threatened to kill her or her son unless she signed "promissory notes[1]" in favor of the Plaintiff. The Debtor admits that she signed some of the receipts, but she denies that she signed others.

The Debtor also alleges that the Plaintiff and her ex-husband were close friends and that they would regularly go to casinos where her ex-husband would use money borrowed from the Plaintiff to gamble. The Debtor claims that the so-called promissory notes represented funds borrowed by her ex-husband. The Debtor further alleges that the Plaintiff knew the borrowed money was used for her ex-husband's gambling debts or that he used it for gambling. The Debtor admits that she did not intend to repay money to the Plaintiff because the debt was not hers. The Debtor denies that she co-signed her ex-husband's loan and maintains that her ex-husband coerced her to sign "promissory notes" for his gambling debts under extreme duress and under threat of bodily harm. The Debtor further denies that the Plaintiff's alleged reliance on statements by the Debtor was reasonable because the Plaintiff knew that the debts were owed on account of gambling activities.

The Debtor contends that her counsel erroneously listed the Plaintiff's claim as "undisputed." The Debtor submits that she promptly amended her "petition" to designate the debt as disputed. The Debtor also admits that she listed two bank accounts in her petition. The Debtor states that she did not realize that she had an account with BNYM because it is an HSA controlled by her employer. The Debtor claims that she did not realize the HSA was tied to a bank account that appeared in her name and that

---

[1] Debtor uses the phrases "promissory notes" and "receipts" interchangeably.

4

she rarely used the account. The Debtor denies that she fraudulently omitted the BNYM account and states that she promptly amended her schedules to include it. The Debtor claims that the BNYM account is not reachable by her creditors.

**DISCUSSION**

a. **Summary Judgment Standard**

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056.  A "genuine" issue is one supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1990) (citations omitted). A "material" fact is one that has the potential to change the outcome of the suit under the governing law if the dispute is resolved in favor of the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-15 (1st Cir. 1995).

Where the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under Fed. R. Civ. P. 50(a).  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Provided it does so, the burden then shifts to the opposing party to adduce evidence that establishes a genuine issue of material fact as to at least one essential element of the moving party's case. The court must view all evidence in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. *Daury v. Smith,* 842 F.2d 9, 11 (1st Cir. 1988). The ultimate burden of proving the absence of a genuine issue of material fact remains at all times on the moving party.

b. **Count I: § 523(a)(2)(A)**

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To hold a debtor liable for false representation, the plaintiff must prove each of the following elements by a preponderance of the evidence: 1) the debtor made a knowingly false representation, 2) she did so with fraudulent intent, *i.e.*, with "scienter," 3) she intended to induce the plaintiff to rely on the misrepresentation, and 4) the misrepresentation did induce reliance, 5) which was justifiable, and 6) which caused damage (pecuniary loss). *See Palmacci v. Umpierrez,* 121 F.3d 781, 786 (1st Cir. 1997). A count under § 523(a)(2)(A) sounds in fraud and must be pleaded with particularity and "set out the 'time, place, and content of the alleged representation with specificity.'" Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009; *SEC v. Tambone*, 597 F.3d 436, 442 (quoting *Greenbel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999). The party seeking to except a debt from discharge bears the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

The Plaintiff alleges that, over the course of ten years, the Debtor requested loans from the Plaintiff totaling $58,000, and that the Debtor made oral promises to repay the money and that she signed receipts. The Plaintiff alleges that the Debtor's representations were false because she did not intend to repay the money.

The Debtor denies borrowing money from the Plaintiff, she denies receiving money in exchange for signing the receipts, and she denies telling the Plaintiff that she would pay the money back. The denials contained in the Debtor's Affidavit are consistent with the Debtor's testimony at her 2004 examination. In addition, the Debtor claims that she signed "promissory notes" in favor of the Plaintiff under duress due to the threat of physical and psychological abuse by her ex-husband. The Debtor attached to her Affidavit a copy of an Abuse Prevention Order issued by the Boston Municipal Court (the

6

"BMC") that lists her ex-husband as the Defendant. The Abuse Prevention Order reflects that the BMC has extended the Abuse Prevention Order multiple times since January 2013. The Debtor also argues that the Plaintiff cannot have a claim against her because, under Mass. Gen. Laws ch. 137, § 3, Massachusetts law does not recognize a claim for promissory notes that were executed in order to pay gambling debts or as a promise to pay for known losses sustained as a result of gambling.

The record before me is insufficient to establish that the Debtor made false representations to the Plaintiff. The deposition transcript and the discovery responses cited by the Plaintiff do not describe the specific words used by the Debtor, nor do they specify the date, place or circumstances surrounding the representations.[2] In addition, the Debtor has presented sufficient evidence to establish genuine disputes of fact as to whether she, as opposed to her ex-husband, borrowed money from the Plaintiff and as to whether she signed the receipts under duress. This will require a trial and, therefore, I deny summary judgment on Count I.[3]

c.  Count III: § 727(a)(4)(A)

The Plaintiff argues that the Court should deny the Debtor's discharge because she failed to include her daughter's father as a member of her household for purposes of the means test and because she initially did not list the BNYM account on Schedule B.

---

[2] For example, the Plaintiff alleges that "Debtor Liang made oral representations to Creditor Chen that she would repay the money borrowed and drafted and signed receipts, knowing that she had no intention of paying the money back." *See* Plaintiff's Statement of Relevant Facts in Support of Plaintiff, Feng Cheng's Motion for Summary Judgment ("Statement of Facts"), at ¶ 9. The Interrogatory Answer on which the Plaintiff relies states: "There were many communications between me and [the Debtor] where [the Debtor] would promise to pay back money that she borrowed. I was friends with [the Debtor] and relied on her promise when lending money. During some of the conversations, members of my family were present." *See* Statement of Facts, Ex. 3, Plaintiff's Responses to First Set of Interrogatories of Defendant, Answer No. 10. The Plaintiff also cites to page 29 of the Debtor's 2004 deposition transcript; however, page 29 does not describe any statements made by the Debtor to the Plaintiff. *See* Statement of Facts, Exhibit 4, Rule 2004 Transcript, p. 29.

[3] I base my conclusion on the parties' factual dispute and I am not testing the Debtor's argument under Mass. Gen. Laws ch. 137, § 3. At trial, the Debtor must establish that this statute applies to the alleged debt.

A debtor may be denied a discharge under § 727(a)(4) if "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4). Debtors have an absolute duty to report all assets, "even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *Wood v. Premier Capital, Inc. (In re Wood)*, 291 B.R. 219, 226 (B.A.P. 1st Cir. 2003). A debtor's schedules and statement of financial affairs are the equivalent of a verification under oath and, therefore, misrepresentations and omissions in a debtor's schedules and statement of financial affairs qualify as false oaths for purposes of § 727(a)(4)(A). *Perry v. Warner (In re Warner)*, 247 B.R. 24, 26 (B.A.P. 1st Cir. 2000) (citations omitted). The party objecting to the discharge must show that: 1) the debtor made an oath, 2) that was false and 3) related to a material fact in the case, 4) knowingly, and 5) fraudulently. *See Premier Capital, LLC v. Crawford (In re Crawford)*, 531 B.R. 275, 306 (Bankr. D. Mass. 2015). A material fact under § 727(a)(4) is "one that has a non-trivial effect upon the estate and creditors." *See Nickless v. Fontaine (In re Fontaine)*, 467 B.R. 267, 271 (Bankr. D. Mass. 2012). While an ignorant or inadvertent omission will not be construed as evidence of fraudulent intent, "reckless disregard for the truth may nonetheless be found based upon the cumulative effect of a series of innocent mistakes." *Id*. at 272.

The Debtor denies that she receives financial support from her boyfriend and maintains that there are three people in her household, the Debtor and her two children. This is a factual dispute that must be resolved at trial. In addition, the Plaintiff has not provided any evidence to show that the Debtor's failure to include her boyfriend in her household size was knowing or fraudulent.

With respect to the Debtor's failure to list the BNYM account in her schedules, the Debtor testified at her 2004 examination that it was an HSA controlled by her employer and that she did not realize that it was an account. The docket reflects that she subsequently amended her schedules to include the BNYM HSA and to claim an exemption in it. The Plaintiff has not offered any evidence to suggest that the omission of the account was due to fraud rather than inadvertence.

Based on the record before me, the Plaintiff has not sustained her burden of establishing each element of § 727(a)(4). The Plaintiff has not established that the Debtor's initial omission of the BNYM HSA from her schedules or the calculation of her household size are material facts or that the Debtor's actions were knowingly fraudulent. Therefore, I deny summary judgment on Count III.

### d.  Count IV: § 727(a)(5)

The Plaintiff claims that the Debtor is not entitled to a discharge because she concealed the BNYM account by not listing it on her bankruptcy petition.

Under § 727(a)(5) of the Bankruptcy Code, the court may deny a debtor's discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The plaintiff has the initial burden of identifying the assets in question by appropriate allegations in the complaint and showing that the debtor at one time had the assets but they are no longer available for the debtor's creditors. *Ehle v. Brien (In re Brien)*, 208 B.R. 255, 258 (B.A.P. 1st Cir. 1997) (citing *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988)). Once the creditor has introduced some evidence of the disappearance of substantial assets, the burden shifts to the debtor to explain satisfactorily the losses or deficiencies.  *Id.*

Here, the Plaintiff has failed to establish that the Debtor's failure to list the HSA in her schedules resulted in a loss of an asset that is no longer available for creditors. The Debtor amended her schedules to include the HSA and to claim an exemption in the entire account under 11 U.S.C. § 522(d). There was no objection to the Debtor's claim of exemption in the HSA and, therefore, the HSA is not an asset that would be available to her creditors. Because the Plaintiff has failed to meet her initial burden under § 727(a)(5), her motion for summary judgment as to Count IV is denied.

**CONCLUSION**

      For the reasons above, the Plaintiff's Motion for Summary Judgment is denied.

Date: July 6, 2017

                                                         Frank J. Bailey
                                                         United States Bankruptcy Judge