# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>XING PING LIANG,<br><br>　　　　　　　　Debtor<br><br>FENG CHEN,<br><br>　　　　　　　　Plaintiff<br><br>v.<br><br>XING PING LIANG,<br><br>　　　　　　　　Defendant | Chapter 7<br>Case No. 15-14193-FJB<br><br><br><br>Adversary Proceeding<br>No. 16-1096 |

## MEMORANDUM OF DECISION

**I.  Overview**

Plaintiff Feng Chen ("Chen" or "Plaintiff") seeks a determination that a debt allegedly owed to her by the defendant and chapter 7 debtor, Xing Ping Liang ("Liang" or "Defendant" or "Debtor"), is excepted from discharge under 11 U.S.C. § 523(a)(2)(A). She also asks that the Debtor be denied a discharge under 11 U.S.C. § 727(a)(2)(A), (a)(4)(A), and (a)(5). For the reasons stated herein, the court concludes that plaintiff has failed to carry her burden under sections 523 and 727 of the Bankruptcy Code. Judgment shall accordingly enter for the Debtor.

**II.  Procedural History**

The debt or claim at issue (such as it is) arises out of a personal relationship between the parties that began in 1995.  Following a series of transactions between Chen and Liang over a period of approximately eight years, Chen filed a civil action against Liang in state court. The action had not been concluded when, on October 30, 2015, Liang filed a voluntary petition for relief under Chapter 7 of the

Bankruptcy Code, commencing the present bankruptcy case. The state action has consequently been stayed and remains unconcluded. In her bankruptcy schedules, as amended, Liang listed Chen as an unsecured creditor and indicated that the obligation to Chen, which Liang quantified at $58,000, was disputed.

Chen's complaint is organized into four counts. In Count I, it seeks a determination that Liang's alleged debt to her is excepted from discharge by § 523(a)(2)(A). In Counts II, III, and IV, it seeks a determination on a variety of grounds that Liang is not entitled to a discharge at all. The parties tried the matter over three days and, after trial, submitted proposed findings and conclusions. The following constitute my findings of fact and conclusions of law.

### III.     Jurisdiction

The matters before the court are proceedings to determine the dischargeability of asserted claims under 11 U.S.C. § 523(a)(2)(A) and objections to discharge under 11 U.S.C. § 727(a). They arise under the Bankruptcy Code and in a bankruptcy case and therefore fall within the jurisdiction given to the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). They are core proceedings within the meaning of 28 U.S.C. § 157(b)(1) and (b)(2)(I) and (J) (core proceedings include determinations of the dischargeability of particular debts and objections to discharge). The bankruptcy court accordingly has authority to enter final judgement on them.

### IV.     Findings of Fact

#### a.   The Parties

Chen and Liang are immigrants from China and do not speak English.[1] They have known each other since 1995, when they met while working for the same employer. Liang has a son born in 1998 with her ex-husband and a daughter born in 2009 with a different father. Chen would sometimes help

---

[1] Each testified through a translator at trial.

Liang take care of her son while Chen was unemployed for a time and able to assist. Their friendship grew and they became very close. Liang's son referred to Chen as "Aunt."

### b. Factual Background

It is undisputed that Chen transferred money to Liang over a period of approximately eight years. The total amount of the transfers was $62,650.00. According to Liang, she was directed by her abusive ex-husband to get the money from Chen and to deliver it to him. During the time in which the exchanges occurred, Chen visited certain gambling casinos with Liang and her ex-husband.

Liang testified that she did not intend to pay the money back to Chen at the time she received the money. More to the point, she further testified, credibly I find, that she never promised Chen to make any repayment. She testified that she served only as an intermediary, a courier of monies, between Chen and the ex-husband. Liang testified that, at her ex-husband's direction, she drafted, signed, and gave to Chen receipts for a number of these advances within days following advance of monies. The receipts were not promissory notes, did not include promises to re-pay, did not state an interest rate, and did not state a payment due date or repayment schedule. Although the receipts may have given Chen a feeling of assurance that she would be paid back, Liang never communicated that she would pay Chen back, and none of the receipts includes or bears a promise to repay. The receipts say nothing about whether or when the money would be paid back. On their face, the receipts are mere acknowledgments that money was delivered to Liang.

Liang received money from her ex-husband to make three payments to Chen between the years 2002 and 2009 totaling $9,150, and the Debtor passed on these three payments to Chen: $3,100 on May 6, 2002; $1,400 payment on June 25, 2002; and $4,650 on February 12, 2009. These were payments by the ex-husband in repayment of the monies Chen advanced to him through Liang.

Liang and her ex-husband were divorced on October 17, 2006. Prior to the divorce, they lived together with their son. Beginning in 2001, around the time he started gambling, the ex-husband

became abusive toward Liang and their son. He made multiple threats over an extended period of time, including threats to kill Liang and their son. The ex-husband did not testify at trial. Liang and her son have not seen the ex-husband for many years. On January 29, 2013, Liang filed a complaint for protection from abuse against her ex-husband; it took her approximately twelve years to file for this restraining order, due to complications that arose from her language barrier. She sought the restraining order because her ex-husband made her fearful that he would inflict serious physical harm upon her and her son.

Chen conceded at trial that she knew the money deliveries were related to the ex-husband and his trouble with "loan sharks." Liang believed that loan sharks were people "coming after her" to get the money her ex-husband owed to them. Chen contends that she made each advance to Liang on the basis of an oral agreement between them that the advances were loans, which oral agreement included promises by Liang to repay the monies advanced. Liang denies that she ever made such a promise or that the parties had reached an oral agreement that the monies were a loan that *Liang* would repay. There is corroborating evidence that Chen and the ex-husband understood that the advances were a loan to the ex-husband: that receipts were given to memorialize the advances, and especially that the ex-husband made three payments in repayment of the advances. However, the evidence does not preponderate in favor of a finding that *Liang* ever promised to repay the advances or that the she and Chen shared an understanding that the advances constituted a loan to Liang or for which Liang was assuming responsibility, as a guarantor or otherwise.

   c. **The Ex-Husband**

Liang's ex-husband forced her to obtain the advances from Chen so that he could use these monies for the purpose of gambling and re-paying gambling debts to loan sharks. With a knife he had threatened to kill Liang and her son if she did not come up with the money to cover his gambling debts.

4

Chen contacted the ex-husband in an attempt to collect payment. For the times Chen did contact Liang directly in an attempt to collect the money, Liang explained to Chen that her ex-husband was the one that was responsible for repayment. Liang was not personally in financial trouble when the money was obtained from Chen, and she only took the money from Chen because of the threats from her ex-husband.

### d.  Bank Accounts

Chen alleges that Liang failed to list three bank accounts on the schedule of personal property, Schedule B, that she filed under oath on October 30, 2015, at the commencement of her case. On Schedule B, which called for a debtor to list his or her "checking, savings, or other financial accounts," Liang listed only two bank accounts, one with Sovereign Bank and one with Citibank. She did not list three other accounts that she in fact had at the time of filing: (1) an account at Bank of New York Mellon, (2) a checking account at Santander, and (3) a savings account at Santander.

The account at Bank of New York Mellon is an employer-sponsored health savings account that had a balance at the time of the bankruptcy filing of $1,366.00.  Liang testified, and I find, that when she completed Schedule B, she was under the impression that this account was an insurance plan that was controlled by her employer, not an asset that she already owned. When, after questioning at a Rule 2004 examination, the Debtor later came to understand that she should have listed this account, she filed, on July 5, 2016, an amended schedule B to list the account, and at that same time she also claimed the funds in this account as exempt in their entirety. The Bank of New York Mellon account was an asset that belonged to Liang, and therefore its omission from Schedule B amounted to a false representation. However, because Liang misunderstood her relation to and rights in this account, she did not know this representation to be false when she made it.  Neither did she make this false representation with intent to deceive or defraud.

The Santander checking account that Liang omitted from Schedule B was an account she held jointly with her son; it had been opened for the purpose of holding the son's summer employment earnings, and the funds in the account were entirely her son's, not her own. The Santander savings account that Liang omitted from Schedule B was a "Santander Student Savings" account, also held jointly with her son and containing only his money; it contained approximately ten dollars at the time Liang filed for bankruptcy. Both accounts were opened to hold the wages the son earned from his summer employment. The son could not have opened the accounts on his own because he was a minor when they were opened; he required his mother's assistance, and that is the only reason her name is on the account, too.  The Santander accounts were not assets of Liang. Their omission from Schedule B did not amount to a false statement. Liang believed they belong to her son and not to her; she did not omit them with intent to hinder, delay, or defraud a creditor or the chapter 7 trustee.

    **e.  Household Size and Income**

Chen also alleges that in the Chapter 7 Statement of Your Current Monthly Income ("Form 22A-1") that she filed under oath with her bankruptcy petition, Liang misrepresented (i) her household size by stating that the size was three (herself and her two children) when she should have also included her boyfriend as a member of her household and (ii) her income by omitting from her disclosed income amounts she received from the boyfriend for the household expenses of her and her dependents. I make the following findings.

With her petition, Liang filed and signed under penalty of perjury Form 22A-1, a form then used in chapter 7 cases to aid in determining whether the debtor's filing under chapter 7 gave rise to a presumption of abuse of that chapter for purposes of 11 U.S.C. § 707(b)(2).  In it she listed her household size as three, which included herself, her daughter, and her son, who were undisputedly members of her household, but not her boyfriend, Wei Liang Cao ("Cao").  The Debtor's relationship

with Cao began in 2008. He is the father of Liang's daughter, who, at the time of the bankruptcy filing was five years old.

At the time of her bankruptcy filing, Liang lived in an apartment in Boston's South End with her two children. She signed the lease for this apartment on August 24, 2015, just two months before she filed her bankruptcy petition. She is the lease's only named lessee and the only signer of the lease.

This apartment is government-subsidized housing. Liang's lease required her to obtain written permission prior to any increase in household size. Also, under applicable regulations, rent in the apartment was based on the income of residents living in it, and residents were obligated to disclose their income on a yearly basis in order to determine the rent for the upcoming year. When Liang filed her bankruptcy petition, Cao was receiving income from his job; had he been a resident in that apartment, his income would have to have been included in the calculus of the rent.

Liang testified credibly that Cao did not reside with her and the children, and Cao too testified credibly that he maintained and resided in a separate apartment from Liang's. Both conceded, and the evidence shows, that Cao, as her boyfriend and the father of her daughter, sleeps at her residence "many times" and sometimes up to six times per week. Their daughter has experienced health issues, which required surgery and caused Cao to visit and stay at Liang's apartment frequently, in order to help care for the daughter. The evidence further showed that on August 25, 2015, the day after Liang signed her lease, Cao obtained a driver's license from the Commonwealth of Massachusetts that stated as his address the address of Liang's apartment. Using that address as his own, as evidenced by the driver's license, he has obtained resident parking stickers for the South End neighborhood of Boston and Liang's apartment complex, but when he obtained these parking stickers is unclear. Notwithstanding these facts, it is clear that Cao maintained a separate apartment of his own and treated it as his residence, and I find credible the testimony of both Liang and Cao that, at the time of Liang's bankruptcy filing, he did not not reside at her apartment and was not a member of her household. The fact that, as both her

7

boyfriend and the father of her child, he spent a great deal of time at her apartment, is not necessarily, and in this instance not, inconsistent with that conclusion. Also, in view of the fact that Liang was aware that Cao maintained a separate apartment, I do not find that she knew her answer about household size to be false when she made it.

I further find that Liang had no reason to understate to her creditors, the chapter 7 trustee, and the United States trustee the size of her household on Form 22A-1. An increase in household size would only have worked in her favor in the calculus by which a presumption of abuse is determined. I conclude that, even if Liang's non-inclusion of Cao in her household size was incorrect as a matter of law, Liang made her answer about household size without intent to defraud.

Regarding the alleged failure to disclose income, I make the following further findings. Form 22A-1 required Liang to disclose different kinds of income. On line 2 she listed monthly wages or salary of $2,206.47, and on line 10 she listed food stamps of $122, for total monthly income of $2,328.47. Chen does not contend that either of these entries was false. The total monthly income thus disclosed, on an annualized basis, came to $27,941.64 and was well short of the amount that would have been necessary for a family of three, $87,026.00, to give rise to a need for further inquiry to determine a presumption of abuse.

Chen contends that Liang's answer to Line 4, which Liang said was $0.00, was false. The instructions for Line 4 are (in relevant part) as follows: "All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.  Include contributions from an unmarried partner, members of your household, your dependents, parents, and roommates." In a general instruction pertaining to the entire income section, including Line 4, Form 22A-1 further instructs debtors to supply the "average monthly income that you received from all sources, derived during the six full months before you file this bankruptcy case." Though Chen contends that Liang's

8

quantification of Line 4 at $0.00 was false, she does not in her proposed findings seek a finding as to what an accurate figure for Line 4 would have been, much less how it is to be calculated.

The evidence shows that, during the six months before Liang's bankruptcy filing, Cao had a job, and presumably an income from that job, but the nature of his job and, more importantly, the amount of his income from it are not in evidence. Nor is there evidence of the extent of his regular expenses that did not relate to Liang's household, such as the rent for his own apartment. The evidence permits no conclusion of the amount of income he had available to contribute to the support of his daughter and of Liang's household. There is evidence that he spent a great deal of time at Liang's apartment and contributed, from time to time, amounts to help with support of his daughter. There is evidence that he took the daughter and Liang's son out for dinner on occasion, that he helped pay for the son's automobile and auto insurance, and that he helped supply their daughter with special formula that was medically necessary (though this phase of the daughter's life would have been over by the time of the six months in question). Still, there is no evidence of how much, when, and how he paid for these, much less of the degree of regularity, if any, with which he did any of these things. There is no evidence that he was subject to a court-ordered child support obligation that might have quantified and regularized his support. He and Liang shared a credit card account; Liang opened this account in her name and later arranged for him to use the account with a card in his name, but there is no evidence of the extent to which this account was used for Liang's household expenses (including support of the children), much less the extent to which Cao made or funded payments on the account balance or the regularity of either.

The burden is on Chen to prove that Liang's answer on Line 4 was false. She has not carried that burden. Line 4 requires a tabulation of the average over a particular six-month period of regular contributions. The evidence that Chen has adduced does not begin to show regularity or a total over the six months. Such evidence of support as has been adduced is general, not specific to the particular six

9

months in issue and not specific in amounts. Cao likely made some contributions in the relevant period, but the nature, amount, and regularity of these contributions are not at all clear, and any average amount would be entirely speculative. I cannot find on the evidence adduced that Liang's answer on Line 4 was false.

Much less can I find that Liang knew her answer to be false or that, in supplying this answer, she was motivated intent to deceive or defraud.  It appears exceedingly unlikely that Cao's average contributions over the six-month period, even calculated without regard to their regularity, would have been so much as to make a difference in the presumption-of-abuse calculation.

**V.    Discussion**

A party seeking to except a debt from discharge bears the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). In furtherance of the Bankruptcy Code's "fresh start" policy, exceptions to discharge are narrowly construed. *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997).

**Count I, under § 523(a)(2)(A)**

In Count I, Chen asserts that her unadjudicated claim should be excepted from discharge under § 523(a)(2)(A) as a debt arising from false pretenses, false representations, or actual fraud. Though the complaint invokes all three grounds on which an (a)(2)(A) complaint might be based, "false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A), she now seeks conclusions of law only under the false representation prong.[2] In order to establish that a debt is nondischargable under § 523(a)(2)(A) due to false representation, the plaintiff must prove each of the following elements by a preponderance of the evidence: "1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; 2) the debtor intended to deceive; 3) the debtor intended to induce the creditor to rely upon the false statement; 4) the creditor actually relied upon the misrepresentation; 5)

---

[2] Any reliance on either of the other prongs is accordingly deemed waived.

10

the creditor's reliance was justifiable; and 6) the reliance upon the false statement caused damage." *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001), citing *Palmacci*, 121 F.3d at 786. The first element, making a knowingly false representation, refers to the conduct of the debtor and can include a debtor's promise to act, "[i]f, at the time he made his promise, the debtor did not intend to perform[.]" *Palmacci*, 121 F.3d at 786-87.

The false representations on which Chen relies here are alleged false promises, in essence false representations of intent to repay. Specifically, Chen seeks a finding that Liang told her, verbally every time she borrowed money from her, that she would—that is, intended to—pay the borrowed money back.[3] Liang, who concedes and indeed maintains that she never intended to repay the monies that Chen was advancing to her, denies that she ever promised to repay those monies to Chen, orally or otherwise, and that she never represented to Chen that she intended to repay her. The burden is on Chen to prove that Liang made each alleged representation; the standard of proof is a preponderance of the evidence. I have found that Chen has failed to carry this burden as to any one of the advances in issue. Chen therefore cannot prevail, and judgment must enter on Count I for Liang.

**Count II, under § 727(a)(2)**

In Count II, Chen asserts that Liang should be denied a discharge under § 727(a)(2)(A) on the basis that, with intent to defraud, Liang concealed her account at The Bank of New York Mellon by omitting it from Schedule B, the schedule of personal property that she filed just after she commenced her bankruptcy case. In relevant part, § 727(a)(2) provides that "the court shall grant the debtor a discharge, unless … the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has … concealed … (A) property of the debtor,

---

[3] See Plaintiff's Proposed Findings of Fact, ¶ 19. Chen relies only on alleged *oral* representations. She does not contend that the receipts, which are the only writings in evidence that bear any relation to these advances, contain written promises to repay or written representations of intent to repay. And indeed each of them is strictly a receipt, an acknowledgement of money received, and not a promise or representation of intent to repay.

11

within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition[.]" 11 U.S.C. § 727(a)(2).  Chen cites to and relies on subsection (a)(2)(A), but the alleged act of concealment cannot form the basis for denial of discharge under subsection (a)(2)(A) because it applies only to concealments that occurred "within one year *before* the date of the filing of the petition[.]" 11 U.S.C. § 727(a)(2)(A) (emphasis added). The act in question undisputedly occurred when Liang filed her Schedule B, *after* she filed her bankruptcy petition. I therefore limit my analysis to (a)(2)(B), which applies to postpetition concealments, and which it is clear enough that Chen in substance relies on.

To prevail under § 727(a)(2)(B), Chen must show (1) the debtor concealed property (2) that belonged to the estate (3) after the date of the filing of the petition (4) with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title.  The plaintiff must prove each element by a preponderance of the evidence. *In re Barry*, 451 B.R. 654, 659 (1st Cir. BAP 2011) (applying § 727(a)(2)(A)).

The alleged act of concealment satisfies the first three requirements.  Regarding the first, Liang's omission of her Bank of New York Mellon account, an employer-sponsored health savings account, did serve to conceal the account from creditors and the chapter 7 trustee. "Concealment" can take the form of the debtor's withholding of information about an asset in which he or she has an interest and that he or she is duty-bound to reveal. *R.I. Depositors Econ. Prot. Corp. v. Hayes (In re Hayes)*, 229 B.R. 253, 259 (1st Cir. BAP 1999) and cases cited. Liang was duty-bound to disclose on Schedule B all her personal assets, even those she could claim as exempt, and accordingly she was obligated to disclose the health saving account. The second requirement is satisfied because the asset in question belonged to the estate.  See 11 U.S.C. § 541(a)(1) (the estate is comprised of, among other things, and "except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in

12

property as of the commencement of the case").[4] The third requirement is satisfied because the omission occurred upon the filing of Schedule B, which date was after the date of the filing of the petition.

That leaves only the fourth requirement, whether Liang omitted the asset with intent to hinder, delay, or defraud a creditor or the chapter 7 trustee, an officer of the estate charged with custody of property under this title. I find that Chen has not carried her burden on this issue. Liang did not understand this account to be her asset (as opposed to her employer's). The amount in the account was relatively small. She was at all times able to claim it as wholly exempt. And, as the account was a health savings account, it is unlikely that a trustee or creditor could have reached it. I conclude that in failing to list this account, Liang did not act with intent to hinder, delay, or defraud a creditor or the trustee. Judgment must accordingly enter on this count for Liang.

In her proposed findings and conclusions, Chen adds two further omissions—of the two Santander accounts that Liang held with her son—from Schedule B as alternate bases for this count. This she may not do.  A count under § 727(a)(2) sounds in fraud and must be pled with particularity, Fed. R. Civ. P. 9(b), in order to afford the defendant fair notice of the particular fraud against which she must defend. Here she was not afforded notice that these other omissions might constitute a basis for this count.

Even on the merits, Chen has not carried her burden as to the § 727(a)(2)(B) requirements for these two additional accounts. The Santander accounts held monies belonging not to Liang but to her son. For that reason, they were not assets of the bankruptcy estate, and Liang's omission of them from Schedule B was appropriate and not a concealment of property of the estate. In any event, Liang

---

[4] I reach this conclusion on the basis of the burden of proof.  The health savings account may well qualify for exclusion from the estate under § 541(c)(2), but the burden of proof would be on the debtor to show that this particular asset that she owned was subject to a § 541(c)(2), and she simply has not raised the issue.  I do not intend for this ruling to constitute a ruling on whether the account is subject to such a restriction for any purpose other than the present adversary proceeding.

13

believed these accounts were her sons and not her own, and her omission of them from Schedule B was not done with intent to hinder, delay, or defraud a creditor or the trustee.  Judgment shall enter for Liang Debtor on Count II.

**Count III, under § 727(a)(4)(A)**

In Count III, Chen objects to Liang's receipt of a discharge under § 727(a)(4)(A), alleging that, by three omissions and two false statements in her bankruptcy case, Liang knowingly and fraudulently, in or in connection with the case, made false oaths or accounts. In the First Circuit, the leading case on the interpretation and application of § 727(a)(4)(A) is *Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir. 1987). *Tully* sets forth a two-part inquiry: "Under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath (ii) relating to a material fact." *Id*. at 110.  The first element that the *Tully* court sets forth consists of several subparts and the entire inquiry may be restated as whether (i) the debtor made an oath (ii) that was false and (iii) related to a material fact in the case (iv) knowingly and (v) fraudulently.  *See Commonwealth of Massachusetts v. Bartel (In re Bartel)*, 2009 WL 2461727 at *5 (Bankr. D. Mass. 2009).

It is clear from *Tully* that the burden of proof is on the party objecting to discharge and that the standard of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Tully*, 818 F.2d at 110 ("The burden of proof rests with the trustee."). *Tully* further indicates, however, that "once it reasonably appears that the oath is false, the burden falls upon the [debtor] to come forward with evidence that he has not committed the offense charged." *Tully*, 818 F.2d at 110. I do not understand this language to shift the burden, which remains always on the plaintiff. *Margis v. Blais (In re Blais)*, 2017 WL 627368 at *6 (Bankr. D. Mass. 2017). Nor does it nullify the need to prove knowledge of falsity and fraudulent intent. *Robin Singh Educ. Servs. v. McCarthy (In re McCarthy)*, 488 B.R. 814, 826 (1st Cir. B.A.P. 2013) ("existence of false or inaccurate statements is not, in and of itself, sufficient cause to deny a debtor's discharge unless it is shown that these were knowingly and fraudulently made").

Rather, it establishes that a false oath may itself be sufficient to establish knowledge of falsity and fraudulent intent. *In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974) ("the trier may infer fraudulent intent from an unexplained false statement"). Fraudulent intent may be established by circumstantial evidence or inferred from a course of conduct. *In re McCarthy*, 488 B.R. at 826.

Reckless disregard for the truth has consistently been treated as the functional equivalent of fraud for the purposes of § 727(a)(4)(A). *Id*. and cases cited; *Tully*, 818 F.2d at 112. The sheer volume of misstatements or omissions in a debtor's sworn bankruptcy filings may preclude a finding of excusable inadvertence and instead establish "the type of extreme carelessness or reckless indifferences that equates to fraud and a bar to discharge." *Harrington v. Donahue (In re Donahue)*, 2011 WL 6737074 at *13 (B.A.P. 1st Cir. 2011) (citation and internal quotation marks omitted); see also *ABCD Holdings, LLC v. Hannon (In re Hannon)*, 512 B.R. 1, 18 (Bankr. D. Mass 2014) ("the volume and repeated nature of the Debtor's omisions" made reckless indifference "the only plausible conclusion"); *Nickless v. Fontaine (In re Fontaine)*, 467 B.R. 267, 273 (Bankr. D. Mass. 2012) (debtor's cumulative omissions established his recklessness "beyond doubt"); *cf. Daniels v. Agin*, 736 F.3d 70, 85 (1st Cir. 2013) ("The amounts involved here render reckless errors that arguably may have been only negligent if they had concerned less significant items").

*Tully* instructs that "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor." *Tully*, 818 F.2d at 110. Furthermore, it insists that the reasons for denial of discharge "be real and substantial, not merely technical and conjectural." *Id*.

As to each of the five alleged false oaths on which she bases this count, Chen has failed to establish at least one of the five elements required by § 727(a)(4)(A).

The first basis of this count is Liang's omission of her Bank of New York Mellon health savings account from Schedule B. Chen has failed to establish that this omission was knowing or fraudulent. The omission of this asset, where Liang was under duty to disclose it, constituted a false oath (the schedules

15

having been completed and submitted under penalty of perjury). However, I have found that Liang did not know her omission to be false; she did not understand this account to be hers.  And I have further found that her failure to disclose it was not made with fraudulent intent.  Having failed to establish both knowledge of falsity and fraudulent intent, Chen is entitled to no relief under § 727(a)(4)(A) for this omission.

The second and third bases of this count are Liang's omissions from Schedule B of the two accounts at Santander Bank that she held jointly with her son. I have found that these omissions were not false representations. I have further found that Liang did not know these omissions to be false; she believed the accounts belonged to her son. And I have further found that Liang did not omit these accounts from Schedule B with intent to defraud. Having failed to establish a false oath, knowledge of falsity, and fraudulent intent as to these omissions, Chen is entitled to no relief under § 727(a)(4)(A) for them.

The fourth basis of this count is Liang's alleged misstatement of her household size on Form 22A-1. I have found that Chen has failed to prove that Liang's statement of her household size was false; accordingly, the requirement of a *false* oath is not satisfied. I have further found that Liang did not know her answer to be false; she believed it to be accurate. And I have further found that she did not give this answer with intent to defraud. Having failed to establish a false oath, knowledge of falsity, and fraudulent intent as to this statement, Chen is entitled to no relief under § 727(a)(4)(A) for it.

The fifth and final basis of this count is Liang's alleged false statement of the amount of income she received from Cao on Line 4 of Form 22A-1. I have found that Chen has failed to prove that Liang's response to Line 4 was false; accordingly, it was not a false oath. I have further found that Liang did not know her answer to be false; she believed it to be accurate. And I have further found that she did not give this answer with intent to defraud. Having failed to establish a false oath, knowledge of falsity, and fraudulent intent as to this statement, Chen is entitled to no relief under § 727(a)(4)(A) for it.

**Count IV, under § 727(a)(5)**

In Count IV, Chen asserts that her claim should be excepted from discharge under § 727(a)(5) alleging that Liang has failed to explain satisfactorily, before determination of denial of discharge any loss of assets or deficiency of assets to meet her liabilities. This count was poorly pled. Chen asserts as the gravamen of this count that Liang "with intent to defraud creditors, concealed an account at the Bank of New York Mellon by not listing it on her bankruptcy petition." This claim contains no allegation that the Debtor failed to satisfactorily explain any loss or deficiency of assets to meet the debtor's liabilities, as required by § 727(a)(5).

Under subsection 727(a)(5), a debtor shall be denied a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"  11 U.S.C. § 727(a)(5). The Bankruptcy Appellate Panel has summarized the burdens in § 727(a)(5) litigation:

> The plaintiff has the initial burden of identifying the assets in question by appropriate allegations in the complaint and showing that the debtor at one time had the assets but they are no longer available for the debtor's creditor ….  Once the creditor has introduced some evidence of the disappearance of substantial assets, the burden shifts to the Debtor to explain satisfactorily the losses or deficiencies.

*Ehle v. Brien (In re Brien)*, 208 B.R. 255, 258 (1st Cir. BAP 1999). The plaintiff must identify with specificity the loss or deficiency the debtor has failed to explain and that the debtor has been called upon to explain. *M & I Heat Transfer Products v. Gorchev (In re Gorchev)*, 275 B.R. 154, 155-56 (Bankr. D. Mass. 2002). Once called upon to explain a demonstrated loss or deficiency of assets, it falls upon the debtor to provide a satisfactory explanation. *Aoki v. Atto Corp. (In re Aoki)*, 323 B.R. 803, 817 (1st Cir. BAP 2005) (citation omitted).

I need not set forth the requirements of a satisfactory explanation because Chen has not satisfied her initial burden of identifying a lost asset by appropriate allegations in the complaint. There is no evidence that the sole asset she has cited in conjunction with this count, Liang's health savings

17

account at Bank of New York Mellon, has been lost. Accordingly, judgment must enter for Liang on Count IV.

## VI. CONCLUSION

For the reasons set forth above, the Court will, by a separate judgment, overrule each of the objections to discharge and declare that the debt of Liang to Chen, if any, is not excepted from the discharge that Liang shall receive in this bankruptcy case.

Date:  September 24, 2019

_____
Frank J. Bailey
United States Bankruptcy Judge